548 A.2d 357

Yorktowne Tennis Club, Inc. et al., Appellants *v.* York Township, A Political Subdivision, Appellee.

14

*Daniel M. Fennick, Anderson, Converse and Fennick, P.C.,* for appellants.

*Raymond L. Hovis, Stock and Leader,* for appellee.

OPINION BY JUDGE McGINLEY, September 26, 1988:

Yorktowne Tennis Club, Inc. (Appellant) appeals an order of the Court of Common Pleas of York County (trial court) which sustained the preliminary objections of York Township (the Township) and dismissed Appellant's complaint. We affirm.

Appellant is a tennis and fitness facility, located in York Township and open to the general public. In April of 1987, the Township purchased a tennis and fitness facility, Wynfield Club, located in the Township which is open to the general public.[1] Mr. Jim Rodkey, manager of the Wynfield Club, testified that he sets the user fees and other fees, such as court time, at the Wynfield Club.[2] Mr. Rodkey also testified that the guidelines for establishing the fees or rates were determined by the

---

[1] Notes of Testimony, May 21, 1987, (N.T.) at 5, 7.
[2] N.T. at 13.

York Township Board of Commissioners.[3] The Board of Commissioners instructed Mr. Rodkey to devise a budget for the Wynfield Club in which his expenditures would be met by the income generated through user fees and court fees.[4] Both facilities, for the most part, offer the same services, *i.e.*, indoor and outdoor tennis, aerobics, dance classes, whirlpool, pro shop, tennis lessons and tournaments, and racquetball.[5] Appellant and the Township user fees are identical[6] although the Township court fees are on the average about a dollar less.[7]

Appellant filed a complaint in the trial court pursuant to Section 1501 of the First Class Township Code (Code)[8] to enjoin the Township from providing the described services to non-township residents in violation of the Code. The trial court sustained Appellee's preliminary objections and dismissed the complaint.

This controversy involves the interpretation of Section 3001 of the Code, 53 P.S. §58001, and presents the issue whether a first class township is authorized to operate a public facility such as the Wynfield Club.

Initially, we note that our scope of review of a final decree in equity is limited to determining whether the Chancellor's findings are supported by substantial evidence, whether an error of law was committed or whether the Chancellor abused his discretion. *Penn-*

---

[3] N.T. at 13.

[4] N.T. at 14.

[5] N.T. at 5, 6, 7, 14, 22, 32.

[6] Appellant and the Township charge the following user fees: a resident, single membership is $50.00, $65.00 for a non-resident; a resident family membership is $125.00, $145.00 for a non-resident; and $25.00 for a resident junior tennis membership, $40.00 for a non-resident. N.T. at 45, 46.

[7] N.T. at 25.

[8] Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §56001.

*Delco School District v. Schukraft,* 95 Pa. Commonwealth Ct. 619, 506 A.2d 956 (1986).

Section 3001 of the Code provides that "Townships may . . . acquire . . . private property for the purpose of making, enlarging and maintaining public parks, recreation areas and facilities."

Appellant's argument is based upon a comparison of various County and City Codes.

Section 2501 of the County Code[9] reads in pertinent part:

> The county commissioners may in any county designate and set apart for use as public parks, parkways, bridle paths, foot paths, playgrounds, playfields, gymnasiums, public baths, swimming pools, agriculture fairgrounds or other indoor or outdoor recreation centers, all of which shall hereinafter be referred to as recreation places, any lands . . . owned by such county. . . .[10]

Section 1 of the Act of May 20, 1921, P.L. 957, 53 P.S. §3181, also states that cities "shall have the power to take, purchase, or acquire through condemnation proceedings property for the purpose of erecting, providing, maintaining, and operating thereon playgrounds, playfields, gymnasiums, public baths, swimming pools, indoor recreation centers. . . ."[11]

Section 1 of the Act of July 8, 1919, P.L. 784, *as amended,* 53 P.S. §24191 provides: "The city council of any city of the second or third class . . . may designate and set apart for use as parks, playground, playfields,

---

[9] Act of August 9, 1955, P.L. 323, 16 P.S. §2501.

[10] Under Section 102 of the County Code, 16 P.S. §102, this act applies to all counties of the third, fourth, fifth, sixth, seventh and eighth classes.

[11] This section grants authority to cities under general municipal laws relating to parks, recreation centers, etc.

gymnasiums, public baths, swimming pools, or indoor recreation centers. . . ."

Finally, Section 3703 of the Third Class City Code,[12] in pertinent part provides: "Cities may . . . acquire . . . lands, property and buildings . . . for recreation places which shall consist of public parks, parkways, playgrounds, playfields, gymnasiums, public baths, swimming pools or indoor recreation centers. . . ."

Therefore, Appellant argues the legislature has granted counties and cities extensive authority to acquire land and promote recreational uses. In contrast, Appellant argues, the legislature, in a 1953 amendment, restricted the authority of first class townships by eliminating the broad categorical grants of authority in connection with recreational uses in favor of a narrower authorization. We disagree. As originally enacted in 1931, Section 3001 of the Code reads: "Townships may . . . set apart lands . . . for the purpose of making, enlarging, and maintaining public parks, parkways, playgrounds, playfields, gymnasiums, public baths, swimming pools or indoor recreation centers. . . ." The Act of 1949 added the words "hereinafter called recreation places" preceding the listing of the different uses. Finally the Act of 1953 amended Section 3001 of the Code by deleting the specific list of authorized uses. In its stead the legislature substituted "recreation areas and facilities." This Court must construe a section of a statute with reference to the entire statute and not apart from its context. *Insurance Department v. Adrid et al.,* 24 Pa. Commonwealth Ct. 270, 355 A.2d 597 (1976). Accordingly, Section 3009 of the Code, 53 P.S. §58009 provides:

> Townships may improve, maintain, and regulate public parks, recreation areas and facilities and conduct recreation programs.

---

[12] Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §38703.

> [T]he township commissioners *may equip, operate and maintain the parks, recreation areas and facilities* as authorized by this act and shall employ . . . recreation directors, supervisors, superintendents or . . . employees as they deem proper." (Emphasis added.)

Therefore, we are constrained to hold that the Township's operation of the Wynfield club is not beyond the legislatively permitted uses of "recreation areas and facilities" without the legislature enacting such limitations.

Appellant next argues Section 3001 of the Code does not authorize the Township to offer these facilities to non-residents or to compete with private enterprise in the areas of non-essential services. We again disagree. The legislature, by statute, has granted the Township authority to make specific uses of property acquired.[13] None of these sections under the First Class Township Code limit those uses to township residents. Section 3001 of the Code provides: "Townships may likewise acquire private property within the limits of another township, borough or city for the purpose designated in this section, if the other township, borough or city shall by ordinance signify its consent thereto." This section allows a township to acquire land outside of its limits for the purpose of "making, enlarging and maintaining public parks, recreation areas and facilities." Therefore an interpretation that the legislature intended to limit recreation facilities to residents only would require a departure from the presumption that the legislature did not intend a result which is absurd or unreasonable. *Unionville-Chadds Ford School District v. Rotteveel,* 87

---

[13] Section 1502 of the Code, 53 P.S. §56549 (parking and parking lots), Section 1502 of the Code, 53 P.S. §56550 (airports), Section 1502 of the Code, 53 P.S. §56524 (markets, market houses and peddling), and Section 2005 of the Code, 53 P.S. §57005 (streets).

Pa. Commonwealth Ct. 334, 487 A.2d 109 (1985). Likewise, Appellant's argument that the Township lacks the power to operate a recreational facility in direct competition with a Township resident and taxpayer must fail. Although there is no specific language in the statute that allows competition, to hold that such competition is not allowed would mean an interpretation contrary to legislative intent. For example, Section 1502 of the Code authorizes the Township to provide parking accommodations without specifically mentioning the Township's right to compete with other parking facilities. Therefore, in the absence of any legislative intent to prohibit such competition, under Section 3001 of the Code we must hold that such competition is permitted.

Accordingly, we affirm the decision of the trial court.

### ORDER

Now, September 26, 1988, the order of the Court of Common Pleas of York County dated July 13, 1987 is affirmed.